**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **vs.** | : | **C.R. NO.: 08-26S** |
| | : | |
| **WILLIAM CRUZ** | : | |

**MOTION FOR EXCULPATORY EVIDENCE WITH INCORPORATED MEMORANDUM OF LAW**

Now comes the Defendant in the above-entitled matter by and through his attorney and hereby moves this Honorable Court for entry of an order requiring the United States to provide to him any and all actual and/or potentially favorable or exculpatory evidence relative to the issues of guilt or punishment as is known to the United States of America, its agents or representatives, including but not limited to the Rhode Island State Police, Cranston Police Department, Warwick Police Department, the Rhode Island Department of Health Laboratory, their agents or representatives, which is found within any law enforcement reports or investigative notes of law enforcement agents, or which may otherwise become known by the exercise of due diligence. This request includes any and all information within the possession or knowledge of the United States of America, the agencies above-referenced as well as any forensic laboratory agents or employees of any other entity; whether agents or employees, which could constitute exculpatory or favorable evidence within the meaning of Brady v. Maryland, 373 U.S. 83 (1962) and its progeny. See Also, Giglio v. United States, 405 U.S. 150 (1972), U.S. v. Bagley, 473 U.S. 667 (1985), and Kyles v. Whitley, 514 U.S. 419 (1995).

This request is not exclusive as to the information to be provided and disclosed, as the Defendant is unaware of the contents of the Federal Government's files and the law enforcement files to which the prosecution has access.

Based upon what information the defense currently possesses and based upon what the defense believes may exist by way of exculpatory information, the instant Motion for Exculpatory Evidence is proffered.

Precisely because the defense is not entirely aware of all of the information which could lead to exculpatory evidence, some of the instant requests are somewhat vague and broad but are designed to suggest areas of inquiry that the government may make into its case in an attempt to satisfy these requests.

It is the responsibility of the Federal Government to be familiar with all aspects of the law enforcement files which are considered to be in the control and knowledge of the prosecution. While the Government does not have a duty to discover and disclose information possessed by other federal, state, or local agencies that have no involvement in the investigation or prosecution at issue, See, U.S. v. Bender, 304 F.3d 161 (1st Cir. 2002), this case arose specifically from a Cranston Police Department investigation. The fruits of this investigation form the basis for the criminal allegations in the present case. It is requested that the Court order the Federal Government to provide any and all actual and/or potentially favorable or exculpatory information related to guilt or punishment or sentencing, whether in the files of the United States Attorney's Office, the Cranston Police, Warwick Police, or any forensic laboratories, or of any of the above's agents or employees.

One of the central issues for the defense is the propriety of the finding of probable cause for the issuance of the search warrant. Specifically, there were no controlled buys, marked money or surveillance involved in this case. Basically, the basis for the issuance of the search warrant was founded upon two grounds: information received "several months ago", by "a confidential source who has provided reliable information to law enforcement in the past"; and a trash pull allegedly conducted within 7 days of the application for the warrant which uncovered "seven (7) gallon sized ziplock bags with suspected marijuana residue inside".

In light of this request and the burden upon the United States of America, the following specific Brady disclosures are requested:

1. Any and all evidence of any nature that the Defendant did not or may not have committed the crimes as alleged in this Indictment.

2. Any and all statements, reports, documentation or knowledge by any law enforcement agent, investigator, unindicted co-conspirator, informant, whether confidential or known, or any other individual having any knowledge of the facts of this case which shows or tends to show that misleading statements were included in the search warrant affidavit. Specifically, the defense has a good faith belief

    a) That the "garbage pull" mentioned in the search warrant affidavit referencing "garbage left at the curbside for weekly pickup" was not conducted from the trash pulled from the curbside of 151 Thunder Trail, but rather, from a garbage truck operated by Waste Management which delivered the garbage to

the City of Warwick, where Warwick Police officers sifted through a truckload of trash and allegedly found ziplock bags with marijuana residue in them.

b) There were at least two trash pulls from the residence in question, the first one of which was conducted on Friday, November 16, 2007, and was positive for the presence of marijuana residue and the second, which was conducted on November 23, 2007, immediately prior to the application for the search warrant, which was negative.

c) That the trash pull of November 16, 2007, which was allegedly positive, was conducted by members of Warwick Police and the trash pull of November 23, 2007, (the day of the Search Warrant Application) which was purportedly negative, was conducted by members of the Cranston Police.

3. Any and all statements, reports or documentation which supports the allegation that the Cranston Police did not conduct the trash pull from the curbside of the premises located at 151 Thunder Trail, Cranston, Rhode Island, but rather that it was conducted by members of the Warwick Police Department who sorted through the contents of an entire load of commingled trash that was delivered to Waste Management in Warwick, Rhode Island, pursuant to a trash hauling contract with the City of Cranston. To this end, any dated documents which would verify the date

any alleged trash pulls were conducted, since trash at 151 Thunder Trail is collected on Fridays.

4. The entire criminal record of any witness who may be used to testify against William Cruz, as well as any other information of criminal activity or involvement of such individuals, whether or not said activity resulted in criminal charges being filed or convictions being obtained.

5. The defense is requesting that the complete personnel files of the investigating agents and police officers involved in this case be reviewed, either by the prosecution, or in camera, to determine whether there were any instances of dishonesty or misconduct which would bear upon their credibility at trial. Specifically, and without limitation to the foregoing, the defense is aware that some time ago Detective Raymond Angell had been previously indicted upon a felony count of obtaining money under false pretenses and seventy-five misdemeanor counts of filing false documents, was suspended without pay and was the subject of an internal affairs investigation. The criminal charges apparently stemmed from falsification of Cranston Police time and pay records, a charge which directly implicates the witness' veracity and reputation for truthfulness. Though the criminal charges were dismissed and Detective Angell was reinstated, the defense believes that there was an agreement that in exchange for the criminal charges being dropped, an internal affairs finding of misconduct and discipline was agreed to resulting in loss of seniority, repayment of overtime and other collateral consequences that

are pertinent to issues of credibility. Moreover, the defense is only aware of this particular incident, but believes that there may be other instances of misconduct.

6. Any and all demands or requests for immunity by any witness or potential witness whose information was relied upon by the government in the investigation, prosecution, or trial of this case.

7. Any and all demands or requests for immunity by any persons related to this investigation in any fashion.

8. Any and all offers of assistance, plea bargains, deals, promises, rewards or inducements etc., extended to any witnesses, informants, unindicted co-conspirators, or individuals having knowledge of the facts of this case, whom the United States of America intends to or has used for any purpose in the preparation of this case, including investigation, grand jury appearances, pre-trial motions, trial or otherwise. This request includes but is not limited to any offers of leniency, assistance, forbearance of prosecution, promises as to the *witness' civil tax or administrative liability*, threats of prosecution or investigation for tax evasion, forbearance of investigation as to these or other matters, as well as offers regarding sentencing, recommendations, sentence reductions, parole, and like offers of remuneration.

9. It is further requested that the United States of America provide the names and addresses of any agents, law enforcement officials or others involved in the negotiation or finalization of such agreement or bargain.

10. Any evidence of a confidential informant who reported knowledge of any aspect of this case. This request is intended to apprise the Defendant whether the United States of America has relied upon any information from confidential informants from the date of the incident to present. This request includes but is not limited to, the identity of any confidential informants, the basis of knowledge of any alleged confidential informants, a summary or verbatim account, if available, of the information provided by the confidential informant and the date or dates when said information became known to the United States of America through the City of Cranston. Specifically, the defense questions the basis of knowledge and veracity of the alleged confidential informant to the extent that no alias is ascribed to William Cruz in the Warrant Application, yet, it is commonly known by most people familiar with him that William Cruz has for years gone by a nickname of "Chulo".

11. A list of the names, addresses, and substance or transcript of any and all statements, whether written, recorded, or given orally, of any witnesses whom the United States Government does not intend to use in its case in chief or otherwise in this case and who have knowledge of the facts relevant hereto, if potentially exculpatory, favorable or mitigating regarding issues of guilt and innocence.

12. Any evidence within the possession of the United States which is at odds with the version of facts related by the Government's witnesses, including any "negative" exculpatory evidence, so called, wherein

witnesses failed to identify William Cruz as the party involved with marijuana distribution from 151 Thunder Trail, Cranston.

13. A full and complete statement of any and all promises, rewards and inducements of any kind, made by the Government, its prosecutors or its agents, and/or by state law enforcement agents working in conjunction with the Government in this case, to induce or encourage the giving of testimony or information and made to any prospective witness whom the Government intends to call at the trial of the above-captioned matter, and/or any person who assisted the Government in its investigation of the matter and/or testified at the Grand Jury.

14. Any and all threats, express or implied, direct or indirect, or other coercion made or directed against any witness, including but not limited to:

a) Promises of non-prosecution of said witness(es), friends, or acquaintances for any offenses;

b) Indications made to the witness that they are not the target of the investigation unless they fail to cooperate;

c) Aid or assistance to the witness in procuring a job or similar benefit, or aid or assistance with expenses related to their cooperation in the matter;

d) Promises that cooperation will be brought to the attention of judicial authorities, parole or probation authorities, or others, for the benefit of the person providing the cooperation or for any person acquainted with the person cooperating;

e) Any indication that failure to cooperate would result in some adverse action against the person whose cooperation was sought.

15. Any criminal prosecutions, investigations, or potential prosecutions pending or that could be brought against any witness.

16. Any probationary, parole, deferred prosecution, or custodial status of any witness.

17. Any civil, tax court, court of claims, administrative, or any pending legal dispute or transaction in which any witness is involved, and in which any state or the Federal Government has any real, apparent or perceived influence.

18. Any evidence that may be used to impeach or discredit any witness the Government intends to call at trial, including but not limited to, inconsistent statements of a witness or between witnesses, statements of bias or prejudice against the defendant by a witness, or admissions of poor memory of a witness.

19. Any statements, testimony, or evidence from any individual or entity having knowledge of this case which is inconsistent with:

a) Any portion of the government's evidence or theory of the case (particularly as it relates to whether a firearm was found in a cardboard box under a bedroom mattress or whether it was discovered in a closet with a trigger lock in place);

b) Any discrepancy in the amount of money retrieved from the various locations within 151 Thunder Trail, Cranston.

c) Other statements by that individual witness;

d) Any statements of other witnesses; or

e) That may affect any witness' credibility.

20. Any and all evidence that would impeach any of the government's witnesses or reflect unfavorably upon him or her.

21. Any and all information related to any person other than William Cruz, investigated as a suspect in any of the incidents alleged in the instant Indictment. Specifically, Toni Rossi was charged as a co-defendant by the State of Rhode Island. Her charges were apparently amended and disposed of in State Court without a federal indictment. Defense is not aware of the basis for William Cruz being federally indicted and treated more severely, particularly since this matter was not the subject of a lengthy investigation.

22. Any indication that any agent of the Federal Government or Cranston Police involved in this case has ever been the subject of any reprimand, internal disciplinary action or proceeding, particularly as it relates to the issues of honesty, truthfulness or mishandling of evidence.

23. The full record of arrest and/or criminal convictions of any prospective witness the Government intends to call at trial, and if a witness has been incarcerated pursuant to a conviction, records from any institution at which he/she has been incarcerated.

24. Any psychiatric, substance abuse or counseling records of any potential government witness.

25. Any information which affects the credibility of government witnesses or assists in the cross examination of any government witness, including evidence of bias or motive to lie.

26. Any evidence pursuant to FRE 608,609, and 613.

27. Any evidence which reduces/limits William Cruz's involvement with and/or liability for the instant charges.

Respectfully submitted,

WILLIAM CRUZ,

By his Attorney,

/s/ Scott A. Lutes
SCOTT A. LUTES (#3502)
One Turks Head Place, Suite 1440
Providence, Rhode Island 02903
Telephone: (401) 861-1142
Facsimile: (401) 861-1141

**Statement Pursuant to Local Rule 12(f)**

Defendant avers that any delay occasioned by the making, hearing, or granting of this motion will constitute in whole or in part excludable time as defined by 18 U.S.C. § 3161(h).

/s/ Scott A. Lutes

**CERTIFICATION**

I, the undersigned do hereby certify that I caused a true and accurate copy of the within Motion to be sent by CM/ECF to Zechariah Chafee, AUSA, U.S. Attorney's Office, Fleet Center, 8th Floor, 50 Kennedy Plaza, Providence, RI 02903 on this the 17th day of June, 2008.

/s/ Scott A. Lutes